NOTICE

*The text of this opinion can be corrected before the opinion is published in the* Pacific Reporter. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| DAVID N. DAVID,<br><br>Appellant,<br><br>v.<br><br>STATE OF ALASKA,<br><br>Appellee. | Court of Appeals No. A-11252<br>Trial Court No. 4BE-06-005 CI<br><br>O P I N I O N<br><br>No. 2497 — April 29, 2016 |

Appeal from the Superior Court, Fourth Judicial District, Bethel, Dale O. Curda, Judge.

Appearances: Jane B. Martinez, Anchorage, under contract with the Public Defender Agency, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Terisia Chleborad, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge MANNHEIMER.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

David N. David appeals the superior court's dismissal of his petition for post-conviction relief. The superior court concluded that the petition and its supporting documents failed to state a *prima facie* case for relief.

For the reasons explained in this opinion, we concur in the superior court's assessment that David's petition — in the form it was presented — failed to state a *prima facie* case. We therefore affirm the superior court's judgement. However, as we explain in this opinion, we urge judges to be vigilant and pro-active in making sure that the attorneys who are appointed to represent defendants seeking post-conviction relief do, in fact, provide zealous representation to those defendants.

*Underlying facts*

In 2001, David N. David was accused of first-degree sexual assault and fourth-degree assault. He was tried two times on these charges; the first trial ended in a hung jury, but he was found guilty at the second trial. David appealed, and this Court affirmed his convictions and his sentence in March 2005. *See David v. State*, unpublished, 2005 WL 662691 (Alaska App. 2005).

Several months later, David filed a *pro se* petition for post-conviction relief, asserting that he had received ineffective assistance of counsel from his trial attorney. Specifically, David alleged that his trial attorney, David Henderson, had not communicated with him prior to trial and had refused to file pre-trial motions. David also alleged that Henderson had failed to perform pre-trial investigation of the case, including the testing of physical evidence. David asserted that the victim of the sexual assault was coerced into identifying David as her assailant, and that these investigative measures were needed to rebut the victim's identification and establish David's innocence.

In addition, David asserted that his trial attorney had been operating under a conflict of interest. David contended that this conflict of interest arose because Henderson represented him before and during the two trials, but then Henderson proceeded to "abandon" him — leaving another attorney, Brian Kay, to represent David at sentencing.

In May 2006, the superior court appointed the Public Defender Agency to assist David in pursuing this post-conviction relief action. Over the course of the next three years, the Agency assigned a series of attorneys to David's case before David's petition was eventually submitted in its final form.

The first attorney assigned to David's case was Assistant Public Defender Joshua Fitzgerald, who worked in the Agency's Bethel office. Between July 2006 and May 2008, Fitzgerald asked for (and was granted) eight extensions of time for filing an amended petition for post-conviction relief. Fitzgerald gave various reasons for these requested extensions: not having received the court file in the underlying criminal case; then needing more time to review the trial file and the transcript; and then needing to acquire additional transcripts.

In May 2008 (two years after the Agency's appointment), Fitzgerald notified the superior court that David's case was being reassigned to the Anchorage office — and he asked for a three-month extension of time so that a new attorney could familiarize themself with the case.

The Anchorage office initially assigned David's case to Assistant Public Defender Dan Lowery. At that point, David's amended petition was due in late August 2008. Lowery asked for three extensions, totaling eight months, to file the amended petition. Lowery told the superior court that he needed this extra time so that he could consult an expert witness, and also because he was having difficulty communicating with David, who was incarcerated at the Red Rock Correctional Center in Eloy, Arizona.

In March 2009, with the amended petition due on April 21st, the Public Defender Agency transferred Mr. Lowery to a felony trial position, and David's post-conviction relief case was assigned to Assistant Public Defender Lee DeGrazia. Then, less than three weeks later, Ms. DeGrazia went on leave, and David's case was re-assigned to Mr. Lowery.

Upon re-acquiring David's case, Lowery sought another filing extension. He told the superior court that the re-assignment of David's case within the Agency had delayed the copying and transmitting of court files and transcripts to the expert witness, and thus the Agency needed additional time to secure the expert witness's opinion in the case.

Finally, in June 2009 — 3½ years after David filed his original *pro se* petition for post-conviction relief, and more than 3 years after the Agency's appointment — Lowery notified the superior court that he would not be filing an amended petition, and that he would instead proceed on David's *pro se* petition. Lowery did, however, supplement this *pro se* petition with a one-page affidavit from David's trial attorney, David Henderson.

In this affidavit, Henderson responded to David's contentions that he had failed to file pre-trial motions, and that he had failed to investigate the case. Henderson stated that he was "not aware of any pre-trial motions that should have been filed" and that he was likewise unaware of "[any] evidence that should have been independently tested." Henderson added that he had employed an investigator to investigate David's alibi defense, but this investigator "failed to come up with any witness who would corroborate [David's] alibi."

With respect to David's claim that Henderson had not communicated with him about the case, Henderson asserted that he had "communicated with Mr. David at

the jail on a number of occasions", and that he had "conveyed the [State's plea bargain] offer to him" — an offer "which [David] rejected."

Finally, with respect to David's claim that Henderson had a conflict of interest, Henderson asserted that he "[was] not aware of any conflict of interest that prohibited [him] from representing Mr. David." Henderson explained that, by the time of David's sentencing, he "was no longer working for the Office of Public Advocacy", so "Mr. Kay handled that matter." Henderson declared that he had had nothing to do with David's sentencing or his direct appeal.

Nothing else happened in David's case for over a year. Then, in July 2010 — thirteen months after Lowery announced that he would proceed on David's original *pro se* petition (as supplemented by Henderson's affidavit) — the State filed a motion to dismiss David's petition for post-conviction relief on the ground that David had failed to set forth a *prima facie* case for relief. The superior court tentatively agreed with the State that David's petition was legally inadequate, and the court gave Lowery an additional 90 days to supplement the petition.

Lowery responded to the superior court's order by submitting an affidavit executed by David, in which David provided a more detailed description of his claims for post-conviction relief.

In this affidavit, David faulted Henderson for failing to point out that there were many other convicted sex offenders living in Bethel at the time of the sexual assault, and that "hundreds of other suspects could have committed the assault". David also asserted that the victim's identification of him as her assailant "was not anywhere close to reliable" because the victim's initial description of her attacker did not match David. David contended that Henderson should have hired an expert on eyewitness identification to attack the victim's identification of him.

David's affidavit also described several potential reasons to doubt the accuracy or the credibility of testimony given by various government witnesses at his trial.

In addition to this supplemental affidavit, David also submitted a separate *pro se* pleading in which he made an additional assertion: that Henderson gave him incompetent legal advice by failing to warn him that, if he pleaded guilty, this would prejudice his ability to defend any civil lawsuit filed by the victim. (This particular allegation was meritless on its face, because David did *not* plead guilty; rather, he went to trial — twice.)

After receiving these supplemental pleadings, the superior court again concluded that David had failed to set forth a *prima facie* case for post-conviction relief. The court acknowledged that David had identified "possible flaws in the State's evidence against him". But the court noted that "[these] issues ... were all addressed in [David's] two trials". In other words, David's trial attorney was aware of these potential flaws in the State's case, and he pursued them.

The superior court re-affirmed its earlier conclusion that David had failed to provide any reason to believe that Henderson's handling of the case was below the minimum level of competence expected of criminal defense attorneys. And the court therefore dismissed David's petition.

*Why we agree with the superior court that David's pleadings failed to set forth a <u>prima facie</u> case for post-conviction relief*

The question of whether a petition for post-conviction relief and its supporting documents adequately set forth a *prima facie* case for relief is a question of law. We therefore review the superior court's decision on this question *de novo* — *i.e.*,

without deference to the superior court's conclusion. *See Burton v. State*, 180 P.3d 964, 974 (Alaska App. 2008).

(We acknowledge that this Court has previously issued several decisions where we stated that the standard of review governing this question is "abuse of discretion". [1] Those decisions are wrong. [2])

David's petition for post-conviction relief contains several claims of ineffective assistance of counsel against his trial lawyer, Henderson. Specifically, David contends that Henderson did not communicate with him prior to trial, that Henderson refused or neglected to file pre-trial motions, and that Henderson did not perform a pre-trial investigation of the case (including a failure to seek testing of physical evidence).

But for purposes of deciding whether David's pleadings set forth a *prima facie* case that Henderson's representation was ineffective, the superior court was not required to accept the truth of these broad assertions unless David backed them up with specifics. See *LaBrake v. State*, 152 P.3d 474, 480-81 (Alaska App. 2007), where this Court held that when a trial court rules on the legal sufficiency of a petition for post-conviction relief, the court need not presume the truth of "[a defendant's] assertions concerning the legal effect or categorization of the underlying occurrences [nor a defendant's] conclusory assertions concerning the ultimate facts to be decided."

---

[1]  *See, e.g., Cole v. State*, 72 P.3d 322, 323-24 (Alaska App. 2003); *Tall v. State*, 25 P.3d 704, 708 (Alaska App. 2001); *Jerrel v. State*, 851 P.2d 1365, 1373 (Alaska App. 1993); *Brown v. State*, 803 P.2d 887, 889-890 (Alaska App. 1990).

[2]  See also *Hoendermis v. Advanced Physical Therapy, Inc.*, 251 P.3d 346, 351 (Alaska 2011), and *Nielson v. Benton*, 903 P.2d 1049, 1051-52 (Alaska 1995), holding that it is a question of law whether a civil plaintiff's case is sufficient to survive a motion for summary judgement — and that, for this reason, the trial court's ruling on this issue is reviewed *de novo* on appeal.

Here, David's petition (even in its supplemented form) does not present any specifics to support his claims of lack of communication — and Henderson's affidavit asserts just the opposite.

David's supplemented petition *does* identify potential flaws in the State's criminal case, and David asserts that Henderson failed to pursue these areas of inquiry. But the superior court found that these weaknesses in the State's case *were* explored at David's two trials. And as this Court said in *LaBrake*, "the court need not assume the truth of assertions that are patently false or unfounded, based on the existing record or based on the court's own judicial notice." *Id.* at 481.

David's petition also asserts that Henderson was incompetent for failing to present expert testimony on the subject of eyewitness identification (to attack the victim's identification of David as her assailant), and for failing to obtain expert testing of the physical evidence in the case. But David's petition offers no specific reasons to believe that this proposed expert testimony, or the results of this proposed expert testing, would have helped him.

(We note that the record of the post-conviction relief litigation — in particular, Mr. Lowery's request for an extension of time — suggests that Lowery intended to consult an expert of some sort, and that Lowery was going to provide this expert with materials from David's case. But Lowery apparently decided not to present any information on this issue (whatever it might have been), because Lowery did not amend or supplement David's petition with any offer of expert testimony.)

David's petition also asserts that his trial attorney was operating under a conflict of interest. But David offers no evidence to support a finding that a conflict existed. As we have explained, David asserted that this purported conflict arose because Henderson, after representing him at his two trials, stopped working for the Office of Public Advocacy — leaving another attorney, Brian Kay, to handle David's sentencing

hearing. But David does not offer any evidence that Kay was unprepared to represent him at sentencing, or that this change of attorneys prejudiced him in any other way, or that this change of attorneys violated Henderson's responsibilities to David under the applicable rules of professional conduct.

And finally, David's supplemental *pro se* pleading asserts that Henderson gave him incompetent legal advice by failing to warn him that, if he pleaded guilty, this would prejudice his ability to defend any civil lawsuit filed by the victim. But as we have already explained, this contention is meritless on its face, because David did *not* plead guilty. He pleaded not guilty, and he went to trial.

In sum, we agree with the superior court that David's petition for post-conviction relief did not set forth a *prima facie* case for relief.

*A note on the disturbing procedural history of this case*

Even though we agree with the superior court that David's petition failed to set forth a *prima facie* case for post-conviction relief, we would be remiss if we failed to comment on the manner in which David's litigation was handled by his attorneys.

When an attorney is appointed to represent an indigent defendant who has filed a *pro se* petition for post-conviction relief, Alaska Criminal Rule 35.1(e)(2) requires the post-conviction relief attorney to do one of three things: (1) elect to go forward on the petition as drafted by the client, (2) draft and file an amended petition, or (3) certify to the superior court that the petitioner has no colorable claim for relief.

In *Griffin v. State*, 18 P.3d 71 (Alaska App. 2001), this Court held that when the attorney pursues the third course of action listed in Rule 35.1(e) — *i.e.*, certifying that the defendant has no claims of any arguable merit — the attorney must explain in detail why they reached this conclusion. *Id.* at 76-77.

Our decision in *Griffin* was based in large measure on the need to protect an indigent defendant's constitutional right to counsel. Under the United States Supreme Court's decision in *Smith v. Robbins*,[3] a court must not allow a court-appointed attorney to concede that an indigent defendant's case has no arguable merit — *i.e.*, to concede that there are no colorable arguments to be made in favor of the defendant's position — unless the attorney has presented the court with sufficient information to allow the court to independently determine that this is true. In *Griffin*, we concluded that if we did not interpret Criminal Rule 35.1(e)(2) to require a detailed explanation from the defendant's post-conviction relief attorney, the superior court would not be able to comply with its duty under *Smith v. Robbins* to ensure that the defendant received zealous and competent representation. *Griffin*, 18 P.3d at 77.

Two years later, in *Tazruk v. State*, 67 P.3d 687 (Alaska App. 2003), we applied this same rationale in a case where the defendant's court-appointed attorney pursued the first course of action listed in Criminal Rule 35.1(e) — *i.e.*, electing to go forward on the *pro se* petition drafted by the defendant. The problem in *Tazruk* was that all of the claims listed in the defendant's *pro se* petition were either facially meritless or, at best, facially inadequate to survive a motion to dismiss. *Id.* at 690.

When the State filed a motion to dismiss the petition (on the ground that it failed to state a *prima facie* case for relief), Tazruk's attorney did not seek leave to amend or supplement the defendant's claims, nor did the attorney ask for more time to investigate the claims and (potentially) adduce more evidence to support them. Instead, Tazruk's attorney announced that he had nothing to say in opposition to the State's motion to dismiss. *Ibid.*

We concluded that the record in Tazruk's case raised the same constitutional concerns that were presented in *Griffin* — because it was impossible to tell

---

[3]   528 U.S. 259, 276-281; 120 S.Ct. 746, 759-762; 145 L.Ed.2d 756 (2000).

whether Tazruk's attorney zealously and competently worked on the case. As we explained:

> Even if we assume that Tazruk did receive effective assistance — that is, even if we assume that a zealous and competent attorney could have done nothing more to advance Tazruk's claims — the fact remains that the *record* contains no indication that Tazruk's attorney ever investigated these claims, sought to adduce support for them through discovery, or sought to reformulate them so that they might survive a motion to dismiss. The record shows only the attorney's inaction and ultimate concession of defeat. As was true in *Griffin*, such a record is insufficient to allow the courts to carry out their constitutional duty to make sure that an indigent petitioner receives zealous and competent representation.

> We hasten to add that an attorney's decision to adopt the claims stated in their client's existing petition for post-conviction relief does not necessarily bespeak attorney inattention or neglect. ...

> But in Tazruk's case, there is no record that the attorney did anything to pursue or develop Tazruk's claims. We do not know whether the attorney actually investigated these claims or otherwise worked to develop them; if he did, there is no record of it. And because of this silent record, we are faced with a *Griffin* problem. We do not know — and have no way of assessing — whether the attorney zealously represented Tazruk's interests.

*Tazruk*, 67 P.3d at 691 (emphasis in the original).

Turning to the facts of David's case, we acknowledge that the record in David's case is somewhat fuller than the record in *Tazruk*. The pleadings in David's case suggest that one or more attorneys from the Public Defender Agency reviewed the

trial file and the transcript from David's underlying criminal case. And one of Mr. Lowery's motions for an extension of time suggests that he consulted (or at least intended to consult) some kind of expert witness. And, in the end, Lowery supplied the superior court with a supplemental affidavit from David, as well as a one-page affidavit from David's trial attorney — in which the trial attorney denied all of David's assertions of ineffective assistance.

But even so, we confront a problem in David's case that is analogous in many ways to the problem we confronted in *Tazruk*. On their face, the claims raised in David's *pro se* petition suffered from serious deficiencies. The existing record suggests that David's series of attorneys demonstrated an acceptable level of competence and zeal when they investigated David's potential claims for post-conviction relief, but we concede that the record also leaves a certain level of doubt on this score.

In the end, we can not say that the superior court acted improperly when it dismissed David's petition for post-conviction relief on the pleadings — and we therefore uphold the superior court's resolution of this case. But we urge superior court judges to be pro-active in protecting the rights of indigent defendants when, as here, court-appointed attorneys keep shifting a defendant's case back and forth for months or years, with little discernible progress in the formulation or presentation of the defendant's claims.

*Conclusion*

The judgement of the superior court is AFFIRMED.