NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>*. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| BRETT TALMADGE,<br><br>        Appellant,<br><br>        v.<br><br>STATE OF ALASKA,<br><br>        Appellee. | Court of Appeals No. A-14118<br>Trial Court No. 3PA-l l-01885 CI<br><br><br>O P I N I O N<br><br><br>No. 2819 — October 24, 2025 |

Appeal from the Superior Court, Third Judicial District, Palmer, Kristen C. Stohler, Judge.

Appearances: Renee McFarland, Assistant Public Defender, and Terrence Haas, Public Defender, Anchorage, for the Appellant. Diane L. Wendlandt, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Harbison and Terrell, Judges.

Judge HARBISON, writing for the Court.
Judge HARBISON, with whom Judge TERRELL joins, concurring.

Following a jury trial, Brett Talmadge was convicted of two counts of second-degree sexual abuse of a minor.[1] After this Court affirmed Talmadge's convictions on appeal, Talmadge filed an amended application for post-conviction relief alleging that his trial attorneys provided ineffective assistance of counsel.[2] The superior court granted the State's motion to dismiss, finding that Talmadge failed to state a *prima facie* case for relief. Talmadge now appeals the dismissal of his application, arguing that he did in fact set forth a *prima facie* case with respect to three ineffective assistance of counsel claims — that his attorney (1) did not adequately investigate his claim that he was not present in Alaska at the time of the sexual abuse; (2) failed to advise him on his right to self-representation; and (3) failed to prepare him for his sentencing allocution.

For the reasons explained in this opinion, we conclude that Talmadge failed to establish a *prima facie* case for relief, and we affirm the superior court's order.

*Background facts and proceedings*

We described the facts of this case in our unpublished memorandum opinion affirming Talmadge's convictions:

> In the fall of 2007, when C.B. was fifteen years old, she and her family were friends with Talmadge and his family. C.B. often babysat Talmadge's two boys at his home in Wasilla.
>
> C.B. competed in a rodeo event at the Alaska State Fair in late August or early September. After the state fair, C.B. and her mother and brother traveled to Chugwater, Wyoming with Talmadge and his family, who were moving

---

[1]   AS 11.41.436(a)(1). The State charged and the jury found Talmadge guilty of three counts of second-degree sexual abuse of a minor and one count of attempted second-degree sexual abuse of a minor. However, at sentencing, the court merged Counts II through IV. *See Talmadge v. State*, 2013 WL 784884, at *2 (Alaska App. Feb. 27, 2013) (unpublished).

[2]   *See Talmadge*, 2013 WL 784884, at *5 (affirming convictions on direct appeal).

there. C.B. and her family then continued to Riverton, Wyoming to visit C.B.'s mother's best friend. While in Riverton, C.B. told her mother's friend that before she left Alaska, Talmadge had had sex with her.

At trial, C.B. testified that there were two incidents when Talmadge had sex with her, both of which occurred between the state fair and the trip south. The first incident was at Talmadge's house in Wasilla after a barbecue.

C.B. testified that, prior to the first incident, she spent the morning helping Talmadge and his wife pack up and load things in a trailer for the move. About the time it turned dark, they took a break and had a barbecue. The people who bought the Talmadges' Wasilla house had hired two workers to put in a foundation for a trailer, and those workers were also at the barbecue.

C.B. testified that she drank too much alcohol and passed out on a lawn chair. The next morning C.B. woke up in Talmadge's house. Her vagina was sore, and she was wearing a t-shirt and shorts that belonged to Talmadge.

C.B. testified that she confronted Talmadge that morning about what had happened at the barbecue. And over objection, the trial judge also allowed C.B. to testify that she asked Talmadge if what the workers said was true — that he had carried her inside the previous night. C.B. testified that Talmadge told her not to worry about it.

The second incident of sexual abuse occurred about two days later, when C.B. returned to Talmadge's house to help pack. Talmadge asked C.B. to go with him to his travel trailer. Once they were inside, Talmadge locked the door. Talmadge said he wanted to have sex with her. C.B. told him no, but Talmadge told her that if she did not agree to have sex, he would call her parents and tell them that C.B. was drinking and smoking. Talmadge undressed C.B. and subjected her to digital, vaginal, and attempted anal intercourse.

Talmadge later admitted having sex with C.B. in telephone calls with C.B.'s mother and her friend.[3]

The State charged Talmadge with three counts of second-degree sexual abuse of a minor and one count of attempted second-degree sexual abuse of a minor.[4] The Alaska Public Defender Agency was initially appointed to represent Talmadge. Soon after this appointment, Talmadge asked the court to permit him to act as the Public Defender Agency's co-counsel, and the court held a representation hearing.

At the representation hearing, Talmadge confirmed his request to act as co-counsel, but told the court that he was not seeking to discharge his court-appointed attorney.[5] Despite Talmadge's assertion that he was seeking to act as co-counsel, the court advised Talmadge on the risks of proceeding *pro se*.

The court did not immediately rule on Talmadge's request to serve as co-counsel. Instead, it instructed the parties to file memoranda on the issue. However, the court ruled that in the meantime, Talmadge could file his own motions through the Public Defender Agency. The State and the Public Defender Agency both opposed Talmadge's motion to act as co-counsel, and the court then held another representation hearing on the matter.

At this second hearing, Talmadge expressed concerns about the representation he was receiving from his court-appointed attorney. He explained that he wanted to serve as co-counsel so that he could file his own motions and protect his constitutional rights.

The court once again ruled that Talmadge could file his own motions if he submitted them through his attorney, and it instructed the Public Defender Agency to

---

[3]   *Id.* at *1-2.

[4]   AS 11.41.436(a)(l) and AS 11.41.436(a)(l) & AS 11.31.100(a), respectively.

[5]   At this representation hearing, Talmadge's assigned attorney noted that the Public Defender Agency had a policy prohibiting defendants as co-counsel.

file Talmadge's motions regardless of their merit. The court called this "a form of hybrid counsel," and it emphasized that Talmadge would continue to be represented by the Public Defender Agency at trial. The court instructed Talmadge to raise his concerns about his attorney's representation with the attorney's supervisor.

Over time, Talmadge's relationship with his first attorney worsened. A new assistant public defender was then assigned to represent Talmadge, and Talmadge's case proceeded to trial.

At trial, the State alleged that Talmadge sexually abused C.B. "on or about September 2007" and "at or near Wasilla, Alaska." The State elicited testimony from C.B., C.B.'s mother, and a family friend that Talmadge sexually abused C.B. in Alaska, and that this abuse occurred in approximately late August or early September 2007. The State also played the recorded telephone calls during which Talmadge admitted to having sex with C.B.

In response, Talmadge did not deny that he had sex with C.B. Instead, Talmadge's defense was that the State failed to prove that the sexual acts took place "at or near Wasilla" as alleged. According to Talmadge, he moved to Wyoming in the fall of 2007, and the sexual acts took place in Wyoming, not Alaska.

The evidence supporting the State's timeline was strong. C.B. and her mother both testified that in early September 2007, their family and Talmadge's family drove together from Alaska to Wyoming. C.B. testified that Talmadge sexually abused her twice in the days shortly before the two families left Alaska. According to C.B., the first incident of sexual abuse took place after she went to Talmadge's house in Wasilla to help him pack for his upcoming move to Wyoming. C.B. testified that in the evening the Talmadges had a barbeque, which she attended, along with two other people who were working on the property. C.B. also testified that two days separated this incident from a second incident of sexual abuse that took place in Talmadge's travel trailer (which was located just outside of his house). According to C.B., this second incident took place when she returned to the house to again help Talmadge pack. C.B. testified

that the second incident of sexual abuse took place about a day or two before she and her family, and Talmadge and his family, left Alaska in September 2007.

C.B.'s mother corroborated C.B.'s timeline of events. She testified that the two families left Alaska at the end of the first week of September in 2007, after C.B. had participated in an event at the state fair that took place on August 25. C.B.'s mother also explained that although the Talmadges had sold their house in early August, they had permission from the buyers to continue living in the house until they left the state in early September.

According to C.B. and her mother, the Talmadges were leaving Alaska permanently to move to Wyoming, while C.B.'s family was leaving Alaska only for several months so that C.B. could compete in the rodeo finals in Nevada. C.B. and her mother testified that the families drove together out of Alaska, with C.B.'s mother driving a vehicle that pulled a horse trailer and Talmadge driving a vehicle that pulled a trailer containing the Talmadges' belongings. The two families drove in tandem, and they camped together each night. They eventually reached the Talmadges' new house in Chugwater, Wyoming, and after a few days, C.B.'s family continued their travels to the rodeo finals.

During a conversation Talmadge later had with C.B.'s mother, Talmadge admitted that he had fallen in love with C.B. and that he had sex with her several times at his home. This conversation was recorded and the State introduced a copy of the recording during Talmadge's trial.

As we have explained, Talmadge's defense at trial was that the sexual abuse of C.B. had taken place at his home in *Wyoming* and not at his home in *Alaska*. As support for this defense, Talmadge's defense attorney elicited testimony that C.B. had stated during a police interview that the sexual abuse took place in October 2007. The attorney also elicited testimony from an employee of the Matanuska Electric Association, who testified that Talmadge's electric account for his home in Wasilla was

closed on August 9, 2007. However, the witness did not know whether someone else, such as the new owner, had taken over the account for the home.

The jury found Talmadge guilty of all charges: three counts of second-degree sexual abuse of a minor and one count of attempted second-degree sexual abuse of a minor.[6] The court scheduled the sentencing hearing for a date three months later.

At Talmadge's sentencing hearing, he gave an allocution. In its subsequent sentencing remarks, the superior court referenced Talmadge's allocution, finding that the allocution corroborated information in the presentence report that Talmadge had an "unrealistic sense of entitlement" and was singularly focused on "what he wants rather than on what the victim wants." The court also expressed that Talmadge's professed remorse "r[ang] somewhat hollow" in light of his allocution. The court sentenced Talmadge to a composite term of 23 years with 12 years suspended (11 years to serve).[7] Talmadge filed both a merit appeal and a sentence appeal, and this Court confirmed his convictions in one opinion and his composite sentence in a separate opinion.[8]

Talmadge filed an application for post-conviction relief. After an attorney was appointed to represent him, the attorney filed an amended application, alleging several claims of ineffective assistance of counsel. Three of these claims are relevant to this appeal. First, Talmadge alleged that his trial attorneys ineffectively investigated his jurisdiction defense because they did not interview certain witnesses and did not obtain exculpatory documents prior to trial. Second, Talmadge alleged that his trial attorneys failed to consult with him about his right to self-representation. Third, Talmadge alleged

---

[6] As noted previously, Counts II through IV merged.

[7] *Talmadge v. State*, 2014 WL 5305987, at *1 (Alaska App. Oct. 15, 2014) (unpublished).

[8] *See Talmadge*, 2013 WL 784884, at *5 (affirming convictions on direct appeal); *Talmadge*, 2014 WL 5305987, at *2 (affirming sentence).

that his attorney was unprepared for sentencing and did not assist Talmadge in preparing for his allocution.

The State moved to dismiss the application for failing to state a *prima facie* claim for relief, and the superior court granted the State's motion. This appeal followed.

*The superior court did not err by dismissing Talmadge's claim that his counsel ineffectively advised him regarding his right to self-representation*

In *Risher v. State*, the Alaska Supreme Court adopted a two-pronged test for evaluating ineffective assistance of counsel claims.[9] Under *Risher*, in order to establish a *prima facie* claim of ineffective assistance of counsel, an application must allege facts that, if proven, show (1) that the attorney's performance fell below the standard of minimal competence expected of an attorney experienced in criminal law and (2) that there is a reasonable possibility that, but for the attorney's incompetent performance, the outcome of the proceedings would have been different.[10] Thus, Talmadge's application needed to show both that his attorney's performance fell below the standard of competence and that there was a reasonable possibility that he suffered prejudice — *i.e.*, that the attorney's deficient performance contributed to the outcome.

Talmadge's first claim is that the superior court erroneously dismissed his argument that his trial attorney ineffectively advised him regarding his right to self-representation. Talmadge asserts that his application made out a *prima facie* claim of ineffective assistance because his attorney did not advise him about his right to represent himself and did not bring the issue before the trial court. He also asserts that

---

[9]   *Risher v. State*, 523 P.2d 421, 425 (Alaska 1974).

[10]   *State v. Carlson*, 440 P.3d 364, 389 (Alaska App. 2019) (citing *Risher*, 523 P.2d at 424-25).

this failure was prejudicial because he "would have exercised his right [to represent himself] had [his lawyer] consulted with him."

Although the superior court was obliged to presume that Talmadge's well-pleaded assertions of fact were true, it was entitled to disregard factual assertions if the existing record or the court's own judicial notice demonstrated that the assertions were patently false.[11] Here, the trial record, which was incorporated into Talmadge's application, belies Talmadge's assertions. The record shows that Talmadge was aware of his right to self-representation but never sought to exercise that right.

During the first representation hearing, Talmadge confirmed that he was not asking to proceed without an attorney but rather was seeking to be appointed as co-counsel.[12] Despite Talmadge's declarations that he was seeking to act as co-counsel, the court nonetheless read him an advisement on proceeding *pro se*. This advisement explained, in detail, the benefits of having an attorney and the risks of proceeding without counsel. The court also explained that, in lieu of proceeding without counsel, Talmadge could proceed with "hybrid counsel," whereby he would continue to be represented by an attorney but would also be able to file his own motions. During the hearing, Talmadge confirmed that he wanted to have the assistance of an attorney.

The parties then filed memoranda regarding Talmadge's request to serve as co-counsel. In his filings, Talmadge again clarified that he did not want to represent himself, and he argued that the State's memorandum on this issue was faulty because it was "geared to a totally pro-se case" which was inapposite because he was merely "asking for co-counsel." The court then held a second representation hearing, and during that hearing Talmadge again stated that he was not seeking to proceed without the assistance of counsel, but that he wanted to serve as co-counsel so that he could file

---

[11]  *LaBrake v. State*, 152 P.3d 474, 481 (Alaska App. 2007).

[12]  In the first representation hearing, Talmadge told the court, "I am requesting that I have all the rights to co-counsel with assistance of an attorney."

his own motions and protect his constitutional rights.[13] As we have explained, the court ultimately entered an order that allowed Talmadge to file his motions.

The record thus establishes that Talmadge was aware of and advised about his right to self-representation, but he chose not to pursue this right. His attorney acted competently by bringing the issue of Talmadge's motion for co-counsel to the court's attention, and the attorney's alleged failure to provide Talmadge with additional information about self-representation was not incompetent, given that Talmadge had already been informed of and expressly chosen not to exercise that right.

*The superior court did not err by dismissing Talmadge's ineffective investigation claim*

Talmadge's second claim on appeal is that the superior court erred by dismissing his ineffective investigation claim.

As we have explained, Talmadge's application alleged that his trial attorney was ineffective because the attorney did not interview potential witnesses or gather documentation that would have shown that Talmadge was not in Alaska when the sexual abuse occurred. The State moved to dismiss this claim, arguing that Talmadge's pleading had "fail[ed] to form a *prima facie* case for relief" because he had not provided affidavits, records, or other evidence supporting his allegations, as is required by Alaska Criminal Rule 35.1(d). The superior court agreed and dismissed Talmadge's claim.

---

[13] In the second representation hearing, Talmadge told the court, "It's not that I don't request to have representation. I want to have co-counsel, which is a little bit different than not having representation itself."

We have reviewed Talmadge's application and conclude that he did not plead facts sufficient to establish that his attorney's pretrial investigation, even if incompetent, resulted in prejudice.[14]

As we have explained, Talmadge's defense at trial was that his sexual abuse of C.B. took place in Wyoming, not Alaska. As support for this defense, Talmadge's defense attorney impeached both C.B. and her mother with their prior statements to police that the sexual abuse had taken place sometime around September 18 (*i.e.*, dates that were undisputedly after Talmadge relocated to Wyoming). The defense attorney also presented evidence that Talmadge's electric account for his home in Wasilla was closed on August 9, 2007, and he argued that this proved Talmadge had moved out by that date. The jury nevertheless found Talmadge guilty of all charges. In his application for post-conviction relief, Talmadge asserted that there was additional evidence that he claims would support his assertion that he was in Wyoming when the sexual abuse occurred. However, we have reviewed this evidence, and we conclude that none of the evidence identified by Talmadge would have cast doubt on the State's strong evidence that he was in Alaska.

Talmadge's application provided the names of several witnesses and listed many documents, including utility bills, bank statements, veterinary records, plane tickets, and gas purchases. According to Talmadge, this evidence was "clearly relevant to challenging jurisdiction, and had obvious value to an alibi defense or as impeachment evidence." But, even reviewing this evidence in the light most favorable to the application, none of it actually contradicts C.B. or her mother's testimony about when

---

[14] "The question of whether a petition for post-conviction relief and its supporting documents adequately set forth a *prima facie* case for relief is a question of law." *David v. State*, 372 P.3d 265, 269 (Alaska App. 2016). This Court "reviews the superior court's decision on this question *de novo* — *i.e.*, without deference to the superior court's conclusion." *Id.* To establish prejudice, the applicant must "make a specific factual showing that counsel's incompetence had some actual, adverse impact on the case." *State v. Jones*, 759 P.2d 558, 573 (Alaska App. 1988).

the sexual abuse occurred. Instead, the evidence is largely cumulative of what was presented at trial.[15]

For example, Talmadge claims that his attorney should have called Dan Morrison, the person who bought Talmadge's house, to testify that the sale of the home closed on July 17, 2007. But as we have explained, the jury was aware that Talmadge sold his home prior to the sexual abuse. Talmadge's trial attorney called a utility employee witness to testify that the utilities for Talmadge's residence were not in his name at the time of the abuse. And both C.B. and her mother testified that Talmadge sold his home — but was still living on the property — prior to the sexual abuse. As a result, Morrison's testimony would largely be cumulative to the other evidence establishing that Talmadge sold his home prior to the sexual abuse. And even if Morrison testified that he took possession of the property prior to the sexual abuse, this is not necessarily inconsistent with C.B.'s testimony. Morrison's possession of the property would not mean that Talmadge lost access to the property or the trailer adjacent to the property where the sexual abuse occurred. Indeed, the documents attached to Talmadge's first application for post-conviction relief indicate that Morrison would testify that Talmadge stayed in the home for at least a month after it was sold and that Morrison was not sure of the exact date that Talmadge vacated the home. Likewise, Morrison's possession of the property does not itself establish when Talmadge left the state — he could have resided at another person's house or camped as he did during his road trip to Wyoming. Especially in light of the documents attached to Talmadge's application, the absence of Morrison's testimony was not prejudicial.

Similarly, while the utility bills Talmadge submitted with his application established that Matanuska Electric Association disconnected Talmadge's electrical account for his Wasilla home in early August 2007, this information was largely cumulative of the testimony provided by the Matanuska Electric Association employee

---

[15] *Jones*, 759 P.2d at 573.

at trial and also not actually inconsistent with Talmadge remaining in Alaska until after he sexually abused C.B.

Plane tickets showing Talmadge left Alaska at various times likewise would not have helped establish when Talmadge moved from Alaska to Wyoming, nor would they have helped establish that the abuse happened when Talmadge was outside of Alaska. This is particularly true given the uncontroverted evidence at trial that Talmadge and his family relocated to Wyoming by driving there.

Talmadge's application also claimed that Talmadge's ex-wife and two other witnesses could have testified to additional minor details about the timing of Talmadge's move to Wyoming that would contradict C.B. and her mother's timeline of events. But the application contained contradictory information about what these witnesses would testify to, and C.B. and her mother's timeline of events had already been subject to rigorous challenges by Talmadge's trial attorney. We therefore ultimately conclude that there was no reasonable possibility that the outcome of the trial would have been different if the jury had heard this testimony.

Additionally, Talmadge's bank statements, which he claims should have been presented at trial, actually establish the opposite of what Talmadge sought to prove. The statements indicate that Talmadge's bank card was being used in Alaska as late as September 7 and then show a series of purchases through Canada and then multiple states in the lower 48, including Wyoming. Contrary to Talmadge's claims, this corroborates the timeline provided by C.B. and her mother.[16]

For these reasons, we conclude that, even assuming the truth of Talmadge's claim that his attorney failed to obtain this additional evidence and to introduce it at trial, the evidence would not have meaningfully furthered Talmadge's

---

[16] *See LaBrake v. State*, 152 P.3d 474, 481 (Alaska App. 2007) (allowing courts to disregard factual assertions in applications for post-conviction relief if the existing record or the court's own judicial notice demonstrated that the assertions were patently false).

defense that the sexual abuse did not take place in Alaska, nor his jurisdictional attack on trial in Alaska. The application therefore failed to set out specific facts showing that Talmadge was prejudiced by his attorney's omissions.

*The superior court did not err by dismissing Talmadge's claim that his attorney ineffectively prepared him for allocution at sentencing*

Talmadge's final claim is that his attorney provided ineffective assistance of counsel by failing to prepare him to give an allocution at sentencing.

Following Talmadge's conviction, the State filed a sentencing memorandum, and the Department of Corrections prepared a presentence report. A probation officer interviewed Talmadge in the presence of his attorney and included details from that interview in the report. The presentence report stated that Talmadge had also been informed of his right to provide a written statement as well as his right to give an allocution at sentencing.

The presentence report included statements from Talmadge's biological father and stepfather that discussed Talmadge's sense of self-entitlement. Talmadge's biological father stated that Talmadge "always played the victim and felt that everyone owed him something and he owed nothing to anyone else." Talmadge's father further stated that Talmadge has a history of inappropriate relationships with young girls, and he expressed concern that Talmadge's behavior would likely continue. Talmadge's stepfather echoed these concerns and also stated that Talmadge "never tells the whole truth and only tells what will benefit him in the end."

The prosecutor referred to these statements in the sentencing memorandum that she filed prior to sentencing. The prosecutor noted that Talmadge had demonstrated a similar sense of self-entitlement in the recorded telephone calls, where he talked primarily about himself rather than the victim. At the sentencing hearing, the prosecutor asked the superior court to impose a sentence of 14 years to serve with additional time suspended and 10 years of probation.

Talmadge chose to address the court at the time of sentencing. In his allocution, Talmadge expressed remorse. However, he also accused a witness of perjury and continued to dispute whether he was in Alaska at the time of the sexual abuse. He characterized his conduct as just "a mistake." Talmadge emphasized that "throwing [him] behind bars for 14 years [was] just going to make [him] angry and . . . [was] not going to rehabilitate anything."

In imposing the sentence, the court emphasized the seriousness of the second incident, finding that Talmadge had used threats and duress to take advantage of C.B.'s youth, vulnerability, and lack of sophistication in order to further his own sexual gratification. The court also found that Talmadge's prospects for rehabilitation were diminished by his "unrealistic sense of entitlement" and that his professed remorse "r[ang] somewhat hollow," given "his overall statements upon allocution." The court noted that Talmadge's allocution "corroborate[d]" the information in the presentence report, which likewise emphasized Talmadge's feelings of entitlement.

The superior court merged three of the counts and imposed sentences within the presumptive range: 10 years with 5 years suspended for Count I and 15 years with 7 years suspended for merged counts II-IV.[17] The court ran these sentences partially consecutively, ultimately imposing a composite sentence of 11 years to serve.

Talmadge appealed this sentence as excessive, and we affirmed the sentence in an unpublished memorandum opinion, determining that the sentence was not clearly mistaken.[18]

As we have explained, Talmadge's application for post-conviction relief asserted that his attorney was ineffective because the attorney had "failed entirely" to prepare him for allocution. Talmadge's affidavit alleged that the "lack of prep cost

---

[17] *Talmadge v. State*, 2014 WL 5305987, at *1 (Alaska App. Oct. 15, 2014) (unpublished).

[18] *Id.* at *1-2.

[him] years" because the judge took certain comments in his allocution as "not showing remorse" and because "the judge attacked [him] for stating that they did not have jurisdiction over the crime." Notably, Talmadge did not provide any details about what he would have said if his attorney had properly prepared him for his allocution. Nor did he provide any specifics about what his attorney should have done that he failed to do. Talmadge's attorney's affidavit did not directly respond to the allegation that the attorney had "failed entirely" to prepare Talmadge for his allocution. However, Talmadge's attorney did acknowledge in his affidavit that the sentencing "didn't go well."

The superior court dismissed this claim of ineffective assistance of counsel for failure to state a *prima facie* case, ruling that Talmadge had failed to show that he would have received a different sentence if he had given a better-prepared allocution.

On appeal, Talmadge renews his claim that his lawyer was incompetent for not discussing his allocution with him prior to the hearing. He asserts that the prejudice flowing from this incompetence is apparent because the superior court referenced the allocution during its sentencing remarks, when it found that Talmadge had poor prospects for rehabilitation.

We agree with Talmadge that an attorney's complete failure to prepare a defendant for allocution may constitute deficient performance.[19] However, we also agree with the superior court that Talmadge's pleadings have failed to demonstrate a reasonable possibility that review and input from counsel would have led to a different

---

[19] *See Harden v. State*, 180 A.3d 1037, 1040 (Del. 2018) ("The right to representation includes having a lawyer who makes a reasonable effort to prepare you for allocution, decides if you can do so effectively, and helps you put your best foot forward if you decide you wish to speak."); *State v. Dunlap*, 313 P.3d 1, 43 (Idaho 2013) (stating that an attorney's failure to help prepare their client for an allocution statement could constitute deficient performance); *ABA Standards for Criminal Justice: Defense Function* § 4-8.3(f) (4th ed. 2017).

sentencing outcome.[20] As discussed, in its sentencing remarks, the court expressed concern about the seriousness of Talmadge's conduct. And while the court commented on Talmadge's allocution when discussing Talmadge's prospects for rehabilitation, the court noted that similar information could be found in the presentence report.

We accordingly conclude that Talmadge's application for post-conviction relief failed to demonstrate a reasonable possibility that his attorney's alleged failure to prepare him for his allocution had an impact on the sentence he received. Accordingly, the superior court did not err in summarily dismissing this claim.

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

[20] *See Risher v. State*, 523 P.2d 421, 425 (Alaska 1974) (holding that if the applicant established incompetence, "all that is required additionally is to create a reasonable doubt that the incompetence contributed to the outcome").

Judge HARBISON, with whom Judge TERRELL joins, concurring.

I write separately to express my view that one of the superior court's reasons for dismissing Talmadge's ineffective investigation claim — that Talmadge's application did not comply with the requirements of Criminal Rule 35.1(d) — was improper. Because the parties have briefed this issue, I would take this opportunity to clarify that, if the requirements of Rule 35.1(d) are not met, an application for post-conviction relief is incomplete, and the trial court should enter appropriate orders requiring the applicant to provide the missing evidence or an explanation for why the evidence cannot be submitted. Furthermore, the State should not be required to respond to the application until it is complete.

### a. The superior court's ruling and the parties' arguments on appeal

As the majority opinion has explained, Talmadge's application alleged, *inter alia*, that his trial attorneys were ineffective because they did not interview potential witnesses or gather documentation that would have shown that Talmadge was not in Alaska when the sexual abuse occurred. The State moved to dismiss this claim, arguing that Talmadge had not provided witness affidavits or documentary evidence supporting his allegations, as is required by Alaska Criminal Rule 35.1(d). The superior court agreed and dismissed Talmadge's ineffective investigation claim, reasoning, in part, that Talmadge had not provided affidavits or documentary evidence in support of his claim nor explained why he could not provide this information. As support for its decision, the superior court relied on this Court's unpublished summary disposition in *Wilkerson v. State*.[1]

---

[1] *Wilkerson v. State*, 2020 WL 9174578 (Alaska App. Mar. 11, 2020) (unpublished summary disposition).

But *Wilkerson* involved the dismissal of an application at the second stage of a post-conviction relief proceeding, after the parties had conducted discovery, and thus it does not support the dismissal of Talmadge's application. In the appellate briefing, however, the parties note that *Wilkerson* was based on a published opinion — *Allen v. State* — which has a procedural background somewhat closer to that in Talmadge's case.[2] In *Allen*, as in Talmadge's case, the State moved to dismiss the application during the first stage of post-conviction proceedings rather than during the second stage.[3]

*Allen* involved an appeal from the dismissal of an application for post-conviction relief alleging ineffective assistance of counsel.[4] In his application, Allen claimed that his attorneys had incompetently failed to call two witnesses to testify during his jury trial.[5] Allen supported his application with affidavits from his attorneys and from the investigators who worked on his case.[6] In one investigator's affidavit, she explained that the two potential witnesses made favorable statements when speaking to her, and summarized those statements.[7] However, Allen's application did not include the personal affidavits of these two witnesses.[8]

The State moved to dismiss Allen's application, arguing, *inter alia*, that dismissal on the pleadings was appropriate because Allen had not provided personal

---

[2]   *Allen v. State*, 153 P.3d 1019, 1021 (Alaska App. 2007).

[3]   *Id.* at 1020-21.

[4]   *Id.*

[5]   *Id.* at 1021.

[6]   *Id.* at 1022.

[7]   *Id.* at 1021.

[8]   *Id.* at 1023, 1026.

affidavits from the two witnesses.[9] On appeal, this Court concluded that Allen's failure to include personal affidavits was "a potentially fatal flaw" in the application.[10] However, we affirmed on other grounds.[11]

In *Allen*, we emphasized that post-conviction relief applicants "must supply supporting affidavits . . . or . . . must explain why such affidavits cannot be obtained,"[12] and we noted that Allen had not only failed to provide affidavits, but had failed to provide an explanation for their absence or to request more time to obtain them.[13] Further, we analogized this aspect of the post-conviction relief process to civil motions for summary judgment:

> By requiring the defendant to present affidavits from the people who could actually give the proposed testimony in a court proceeding, we are following the rule that applies to the litigation of motions for summary judgement in other civil cases.
>
> When motions for summary judgement are litigated, the ultimate question is whether the case presents any triable — *i.e.*, genuinely disputed — issues of material fact. In such litigation, the parties normally rely on affidavits, depositions, admissions, answers to interrogatories, and similar evidentiary material that is produced outside of court hearings. Nevertheless, if the parties choose to submit affidavits, the affidavits must affirmatively show that the affiant is competent to testify to the matters stated. In other words, hearsay statements that would be inadmissible at trial

---

9   *Id.* at 1023.

10   *Id.* at 1025.

11   *Id.* at 1026-27.

12   *Id.* at 1026.

13   *Id.* at 1025.

can not be employed to support or defend a motion for summary judgement.[14]

In the present case, the State and Talmadge both agree that *Allen*'s analogy to civil summary judgment motions was inapt. *Allen* involved an appeal from an order granting the State's motion to dismiss on the pleadings — *i.e.*, for failure to state a *prima facie* case for post-conviction relief.[15] But rather than comparing the State's motion to a motion to dismiss under Alaska Civil Rule 12, we instead compared it to a motion for summary judgment under Alaska Civil Rule 56.[16]

The parties disagree, however, about whether the superior court was entitled to rely on Talmadge's failure to support his claim with admissible evidence, or

---

[14]   *Id.*

[15]   *Id.* at 1021.

[16]   *Id.* at 1025. I note that a motion for summary judgment is typically adjudicated only after the parties have had a reasonable opportunity to conduct necessary discovery, and may be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Alaska R. Civ. P. 56(a), (c), (f); *see also State v. Jones*, 759 P.2d 558, 565-66 (Alaska App. 1988).

By contrast, a motion to dismiss for failure to state a claim may be filed prior to filing the answer, and a court will grant the motion if it appears beyond doubt that the plaintiff can prove no set of facts in support of their claim that would entitle them to relief. *See* Alaska R. Civ. P. 12(b)(6); *Guerrero v. Alaska Hous. Fin. Corp.*, 6 P.3d 250, 253-54 (Alaska 2000); *Rae v. State, Dep't. of Corr.*, 407 P.3d 474, 478 (Alaska 2017).

A motion for judgment on the pleadings is typically filed after the pleadings are closed, but before the parties have conducted discovery. A court may grant the motion if, viewing the facts presented in the pleadings in the light most favorable to the nonmoving party, there exists no triable issue of fact, and the moving party is entitled to judgment as a matter of law. *See* Alaska R. Civ. P. 12(c); *Hebert v. Honest Bingo*, 18 P.3d 43, 46-47 (Alaska 2001).

These distinctions are not perfectly rigid. For example, a motion for judgment on the pleadings under Civil Rule 12(c) may be treated as a motion for summary judgment under Civil Rule 56 if the moving party properly places matters outside of the pleading before the court. Alaska R. Civ. P. 12(c).

to otherwise explain why such evidence could not be provided, as a basis for summarily dismissing Talmadge's claim. Talmadge acknowledges that *Allen* may support the summary dismissal of his claim, but he urges that *Allen* erroneously required an application for post-conviction relief to be supported by admissible evidence in order to plead a *prima facie* case.

Talmadge's application for post-conviction relief, like *Allen*'s, included a claim of ineffective pretrial investigation. In support of the application, Talmadge submitted his own affidavit detailing the documentary evidence his trial attorney had failed to obtain and the testimony certain witnesses could have provided. The State moved to dismiss Talmadge's ineffective investigation claim during the pleading stage, arguing, as it had in *Allen*, that it was entitled to dismissal because Talmadge had not provided affidavits, records, or other evidence supporting his allegations. The superior court granted the State's motion, stating that the claim must be dismissed because Talmadge failed to attach the required evidence, or an explanation for why the evidence was unavailable, to his application.

On appeal, Talmadge asserts that the superior court erred in summarily dismissing his application for failing to plead a *prima facie* case. He contends that *Allen* incorrectly stated that an application for post-conviction relief must be supported by "affidavits from the people who could actually give the proposed testimony in a court proceeding[.]"[17] According to Talmadge, this erroneous statement was derived from the *Allen* court's misunderstanding of the distinction between a motion to dismiss for failure to state a *prima facie* claim and a Civil Rule 56(e) motion for summary judgment.

The State responds that, while *Allen*'s analogy to summary judgment motions under Civil Rule 56(e) was inaccurate, its fundamental holding was sound. The State notes that Criminal Rule 35.1(d) requires that post-conviction relief applications contain supporting affidavits or other documents at the pleading stage. It asserts that

---

[17]   *Allen*, 153 P.3d at 1025.

dismissal for failure to state a *prima facie* claim is warranted if factual claims necessary to stating a *prima facie* claim are not supported by admissible evidence or an explanation for why such evidence has not been provided.

### b. *The history and plain language of Alaska Criminal Rule 35.1*

Alaska Criminal Rule 35.1(d) sets out the required contents of an application for post-conviction relief. The rule states, in relevant part, that an application must

> specifically set forth the facts and legal grounds upon which the application is based, and . . . clearly state the relief desired. Facts within the personal knowledge of the applicant shall be set out separately from other allegations of facts and shall be under oath. Affidavits, records, or other evidence supporting its allegations shall be attached to the application or the application shall recite why they are not attached. . . . Applications which are incomplete shall be returned to the applicant for completion.[18]

Notably, Criminal Rule 35.1(d) does not contain any procedure for dismissing an application on the pleadings. Instead, the rule clearly instructs that "[a]pplications which are incomplete *shall* be returned to the applicant for completion."[19] (By contrast, Criminal Rule 35.1(f) describes the procedure for obtaining judgment on the pleadings.)

The history of Criminal Rule 35.1 provides context for why the Alaska Supreme Court included the provision that incomplete applications "shall be returned to the applicant for completion." This history suggests that this choice of remedy was purposeful, and that the supreme court wanted applications to be complete *before* trial courts adjudicated motions to dismiss because this would encourage trial courts to reach

---

18   Alaska R. Crim. P. 35.1(d).

19   *Id.* (emphasis added).

the merits of post-conviction claims, rather than dismissing them on procedural grounds, which in turn would promote fairness and reduce the likelihood that federal courts would conduct evidentiary hearings into Alaska criminal convictions in habeas corpus proceedings.

In 1961, the supreme court promulgated Alaska Criminal Rule 35(b), which was a precursor to Criminal Rule 35.1 and was Alaska's first rule setting out a procedure for post-conviction relief.[20] This first post-conviction relief rule was patterned after 28 U.S.C. § 2255[21] and allowed prisoners to file motions attacking their sentences if the sentence was, *inter alia*, "imposed in violation of the Constitution or laws of the United States or . . . of Alaska."[22]

In 1968, the Alaska Supreme Court enacted Supreme Court Order (SCO) 98, which rescinded the 1961 version of Criminal Rule 35(b) and replaced it with a comprehensive post-conviction relief procedure that was codified as Criminal Rule 35(b) through (j).[23] The supreme court modeled this new procedure on the 1966

---

[20]  *Compare* SCO 30 (effective Feb. 1, 1961) (promulgating former Alaska R. Crim. P. 35(b) (1961), which included the procedure for an application for a writ of habeas corpus), *with* SCO 4 (effective Oct. 9, 1959) (promulgating former Alaska R. Crim. P. 35(b) (1959), which only discussed the procedure for correcting an illegal sentence).

[21]  *Rivett v. State*, 395 P.2d 264, 270 (Alaska 1964) (explaining that Criminal Rule 35(b) was patterned after a "similar provision in 28 U.S.C.A. § 2255"); *McCracken v. State*, 482 P.2d 269, 273 (Alaska 1971) (explaining that Criminal Rule 35(b) "was based essentially upon the provisions of 28 U.S.C. § 2255"); *see also Sanders v. United States*, 373 U.S. 1, 13 (1963) (explaining that Congress enacted 28 U.S.C. § 2255 "to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum" (quoting *United States v. Hayman*, 342 U.S. 205, 219 (1952))).

[22]  Former Alaska R. Crim. P. 35(b) (pre-1968).

[23]  SCO 98 (effective Sept. 16, 1968).

revision to the Uniform Post-Conviction Procedure Act ("the Revised UPCPA"),[24] a document originally published by the National Conference of Commissioners on Uniform State Laws in 1955.[25]

Relevant to this appeal, SCO 98 set out the required contents of an application for post-conviction relief. It provided, in relevant part,

> Facts within the personal knowledge of the applicant shall be set forth separately from other allegations of facts and shall be under oath. *Affidavits, records, or other evidence supporting its allegations shall be attached to the application or the application shall recite why they are not attached.* The application shall identify all previous proceedings, together with the grounds therein asserted, taken by the applicant to secure relief from his conviction or sentence. Argument, citations and discussion of authorities are unnecessary. *Applications which are incomplete shall be returned to the applicant for completion.*[26]

This language was later incorporated into Criminal Rule 35.1(d), and remains substantially the same today.[27]

---

[24] *See Merrill v. State*, 457 P.2d 231, 237 (Alaska 1969) ("Approved in August of 1966, [the Revised UPCPA] became the basis for Alaska's change in Criminal Rule 35[.]"); *State v. Price*, 715 P.2d 1183, 1185 (Alaska App. 1986) ("Subsections (c) through (k) of Criminal Rule 35 are derived from the Uniform Post-Conviction Procedure Act."); *Brown v. State*, 803 P.2d 887, 889 (Alaska App. 1990) ("[T]he Uniform Post-Conviction Procedure Act of 1980 . . . revised the 1966 act from which Alaska's [former Criminal Rule 35] is copied.").

[25] *ABA Standards for Criminal Justice: Post-Conviction Remedies* app. B. at 102 (Approved Draft 1968); *see* Note, *The Uniform Post-Conviction Procedure Act*, 69 Harv. L. Rev. 1289, 1289 (1956).

[26] SCO 98 (effective Sept. 16, 1968) (emphasis added).

[27] *Compare* former Alaska R. Crim. P. 35.1(d) (1987), *with* Alaska R. Crim. P. 35.1(d) (2025) ("Applications which are incomplete shall be returned to the applicant for completion."). In 1995, the Alaska Legislature passed legislation that, *inter alia*, enacted AS 12.72.010-.040 (to set out grounds for post-conviction relief; list limitations on applications for post-conviction relief; specify where an application must be filed; and specify that the applicant has the burden of proving all factual assertions by clear and

Most of this language, including the provision that "[a]ffidavits, records, or other evidence supporting its allegations shall be attached to the application or the application shall recite why they are not attached," was copied verbatim from section four of the Revised UPCPA.[28] The only substantive difference between this provision of SCO 98 and the related provision of the Revised UPCPA is the addition of the last sentence, which states, "Applications which are incomplete shall be returned to the applicant for completion."[29]

To understand why the Alaska Supreme Court made this substantive change, it is helpful to understand the federal legal landscape that prompted the supreme court to enact SCO 98.[30]

In 1963, the United States Supreme Court decided three landmark cases that expanded the authority of federal courts to review state criminal convictions. In *Townsend v. Sain*, the Court held that the "federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary

---

convincing evidence), and amended AS 18.85.100 (to afford indigent applicants the right to appointed counsel). SLA 1995, ch. 79, §§ 9-10. This legislation also amended Criminal Rule 35.1 to reflect these statutory changes. *Id.* at §§ 32-33, 38.

[28] *Compare* former Alaska R. Crim. P. 35(e) (1968) ("Affidavits, records, or other evidence supporting its allegations shall be attached to the application or the application shall recite why they are not attached."), *with* Nat'l. Conf. of Comm'r. on Unif. State Laws, *Proceedings in Committee of the Whole Second Revised Uniform Post-Conviction Procedure Act* at 13 (Aug. 3, 1966) ("Affidavits, records, or other evidence supporting its allegations shall be attached to the application or the application shall recite why they are not attached.").

[29] *See supra* note 27.

[30] *See generally* Charles F. Baird, *The Habeas Corpus Revolution: A New Role for State Courts?*, 27 St. Mary's L.J. 297, 299-305 (1996) (reviewing the evolution of the United States Supreme Court's jurisprudence interpreting the writ of habeas corpus).

hearing in a state court."[31] In *Sanders v. United States*, the Court explained that trial courts may only summarily deny a second or successive petition if the claim had been previously determined on the merits, or if the defendant intentionally withheld raising the claim in a prior proceeding.[32] And in *Fay v. Noia*, the Court held that the jurisdiction of federal courts to consider habeas corpus claims "is not affected by procedural defaults incurred by the applicant during the state court proceeding."[33]

In 1966, the Alaska Supreme Court issued *Thompson v. State*.[34] There, the court explained that "recent United States Supreme Court decisions emphasize[] the desirability of making findings of fact on possible constitutional questions at the trial court level at the earliest appropriate occasion."[35] In support of this, *Thompson* quoted a lengthy passage from *Sanders*:

> Finally, we remark that the imaginative handling of a prisoner's first motion would in general do much to anticipate and avoid the problem of a hearing on a second or successive motion. The judge is not required to limit his decision on the first motion to the grounds narrowly alleged, or to deny the motion out of hand because the allegations are vague, conclusional, or inartistically expressed. He is free to adopt any appropriate means for inquiry into the legality of the prisoner's detention in order to ascertain all possible grounds upon which the prisoner might claim to be entitled to relief.[36]

---

[31] *Townsend v. Sain*, 372 U.S. 293, 312 (1963).

[32] *Sanders v. United States*, 373 U.S. 1, 15-18 (1963).

[33] *Fay v. Noia*, 372 U.S. 391, 438 (1963).

[34] *Thompson v. State*, 412 P.2d 628 (Alaska 1966).

[35] *Id.* at 636.

[36] *Id.* (quoting *Sanders*, 373 U.S. at 22).

In 1968, two years after *Thompson* was decided, the Alaska Supreme Court promulgated SCO 98.[37] The rule file for SCO 98 contains a legal memorandum that discusses *Sain*, *Sanders*, *Noia*, and *Thompson*.[38] It stated that the requirements for adequate post-conviction procedures evolved from the federal cases, and that Alaska has adopted these standards through *Thompson*.[39] The legal memorandum quoted *Sanders*'s argument that an applicant "ought not to be held to the niceties of lawyers' pleadings," and that whether "his application is vexatious or repetitious, or that his claim lacks any substance, must be fairly demonstrated."[40] The memorandum also quoted a law review article that urged states seeking to "maximize state judicial control over state convictions" to adopt post-conviction procedures that comport with federal law to ensure that state courts recognize the "central requirement" for habeas corpus, *i.e.*, "a convicted person get[ing] a full evidentiary hearing on the merits of every federal right he asserts."[41]

Given this rule history, it is apparent that the Alaska Supreme Court added the provision that incomplete applications "shall be returned to the applicant for completion" in order to ensure that trial courts would primarily dismiss post-conviction

---

[37]  SCO 98 (effective Sept. 16, 1968).

[38]  Crim. Rules Comm., *Federal Guidelines for Post Conviction Procedures*, Rule File for SCO 98 (effective Sept. 16, 1968), at 4-7.

[39]  *Id.* at 2, 7.

[40]  *Id.* at 7 (quoting *Sanders*, 373 U.S. at 22).

[41]  *Id.* at 8; Daniel J. Meador, *Accommodating State Criminal Procedure and Federal Postconviction Review*, 50 A.B.A. J. 928, 929-30 (1964). Professor Meador added: "If the state will provide this collateral remedy, it will be in position to make a final disposition in a large proportion of its criminal cases. But if the state does not provide that kind of remedy, it is probable that an equally large proportion of its cases will be retried in part in the federal district courts." *Id.* at 929. Meador also asserted that, in order to comport with federal law, "state judges must learn to read inartfully drawn petitions liberally in favor of the prisoner." *Id.* at 930.

claims on the merits, rather than on procedural grounds.[42] If trial courts were able to dismiss applications solely because they were incomplete, this could invite additional habeas proceedings in federal court, the very outcome that the Alaska Supreme Court sought to avoid by enacting SCO 98.[43]

---

[42] *See Waters v. State*, 1996 WL 341613, at *5 (Alaska App. Mar. 20, 1996) (unpublished) (explaining that when an application is returned as incomplete under subsection (d), it may be revised and refiled but when an application is dismissed under subsection (f)(2), the applicant generally is barred from future reassertion of the same claim).

[43] I note that the Alaska Supreme Court enacted SCO 98 amid a very different federal habeas corpus landscape than the landscape that exists today. As previously explained, in 1963, the United States Supreme Court issued a trilogy of cases that expanded the authority of federal courts to review state criminal convictions. *See Townsend v. Sain*, 372 U.S. 293, 312 (1963); *Sanders*, 373 U.S. at 15-18; *Fay v. Noia*, 372 U.S. 391, 438 (1963). The Supreme Court laid the groundwork for these cases in the preceding decades by, *inter alia*, expanding the scope of the writ of habeas corpus beyond "want of jurisdiction" claims to federal constitutional claims. *See Walker v. Johnston*, 312 U.S. 275, 285 (1941) (holding that the "only admissible procedure" for habeas corpus applications when an issue of fact is presented is for the court to "issue the writ, have the petitioner produced, and hold a hearing at which evidence is received"); *Brown v. Allen*, 344 U.S. 443, 464 (1953) ("Although they have the power, it is not necessary for federal courts to hold hearings on the merits, facts or law a second time when satisfied that federal constitutional rights have been protected."); *see generally* Baird, *supra* note 30, at 299-305. In 1968, the Alaska Supreme Court enacted SCO 98 amid this flurry of federal case law expanding the scope of the writ and the writ's applicability to state criminal convictions.

Since 1968, federal habeas jurisprudence has changed significantly. The United States Supreme Court has disavowed some of its landmark habeas corpus jurisprudence, and Congress has enacted legislation that renders it more difficult for federal courts to review state criminal convictions. *See Wainwright v. Sykes*, 433 U.S. 72, 87-91 (1977) (rejecting the "sweeping language" in *Fay v. Noia* making "federal habeas review generally available to state convicts absent a knowing and deliberate waiver of the federal constitutional contention" (citing *Fay*, 372 U.S. at 439 n.44)); *Williams v. Taylor*, 529 U.S. 420, 434 (2000) (acknowledging that 28 U.S.C. § 2254(e)(2) codified a stricter version of the "diligence" rule that the Court adopted in *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 4-11 (1992), which now makes it substantially more difficult for a petitioner to obtain an evidentiary hearing in federal court if the petitioner did not develop the factual basis of a claim in their state court proceedings); *see also* Baird, *supra* note 30, at 305-37 (discussing how the Supreme Court narrowed the availability of federal habeas corpus by three primary

The Alaska Supreme Court's decision to require that incomplete applications be returned to the applicant is also consistent with contemporaneous commentary by the American Bar Association critiquing the Revised UPCPA. In 1968, the American Bar Association's Advisory Committee on Sentencing and Review issued a report noting certain places in which the Revised UPCPA departed from the minimum standards developed by the advisory committee.[44] In the report's comments about the Revised UPCPA's language requiring affidavits, records, or other evidence to be attached to the application, the report noted that this language "appears to impose an evidentiary burden" on the applicant but does not define "how much proof is required."[45] The report went on to make the following statements:

> [P]resumably a minimum quantum of some level is contemplated [by the requirement to attach affidavits, records or other evidence to the application]. Failure to submit proof at the pleading stage does not lead to automatic dismissal of the application since the requirement permits the alternative of a recital of the reasons for the omission. The proper disposition of an application unaccompanied by the expected attachments and lacking in a satisfactory set of excuses is not set forth, but most likely the application is fatally defective on its face. All of this is quite contrary to

means: retroactive application, procedural default, and harmless error); Eve Brensike Primus, *Equitable Gateways: Toward Expanded Federal Habeas Corpus Review of State-Court Criminal Convictions*, 61 Ariz. L. Rev. 291, 295-304 (2019) (discussing how the procedural obstacles — *e.g.*, statute of limitations and exhaustion doctrine — and substantive obstacles — *e.g.*, the Anti-Terrorism and Effective Death Penalty Act of 1996 and limits on cognizable claims — prevent federal courts from considering state prisoners' habeas claims on the merits). Despite significant changes to federal habeas jurisprudence, the structure and wording of these provisions in current Alaska Criminal Rule 35.1 — including the provision at issue in Talmadge's case — has remained largely intact since 1968.

[44] *ABA Standards for Criminal Justice: Post-Conviction Remedies* app. B at 102-11 (Approved Draft 1968).

[45] *Id.* at 106.

the Minimum Standards view of the realistic functions that can be assigned to the application stage of post-conviction proceedings.[46]

Unlike the Revised UPCPA, SCO 98 clearly set forth the proper remedy when an application is "unaccompanied by the expected attachments and lacking in a satisfactory set of excuses."[47] Under SCO 98, "[a]pplications which are incomplete shall be returned to the applicant for completion."[48] Thus, rather than merely adopting the language of the Revised UPCPA, which was criticized for suggesting that an incomplete application would be fatally defective on its face, the Alaska Supreme Court instead added language clarifying that when an application is incomplete, the court must require the applicant to complete it, either by filing the required attachments or by filing a satisfactory explanation for why they are missing.[49]

I accordingly would conclude that both the plain language and the history of Criminal Rule 35.1 direct that a failure to comply with the requirements of Criminal Rule 35.1(d) is not grounds for summary dismissal of an application for post-conviction relief prior to the discovery stage.

For all of these reasons, I disagree with the State's contention that Alaska Criminal Rule 35.1 permits dismissal for failure to state a *prima facie* claim if the

---

[46]  *Id.*

[47]  *Id.*

[48]  SCO 98 (effective Sept. 16, 1968).

[49]  If the applicant does not provide supporting evidence but does provide a satisfactory explanation for why the evidence is not included, and if the facts alleged in the application would entitle the applicant to relief, then the State must be called upon to respond on the merits. *See State v. Jones*, 759 P.2d 558, 565-67 (Alaska App. 1988). But if the applicant is unable to support their claim with admissible evidence even after being given a reasonable opportunity to conduct necessary discovery, the claim may be summarily dismissed under Criminal Rule 35.1(f)(3). *See id.* at 565-66.

application does not contain either the documents required by section (d) ("affidavits, records, or other evidence") or an explanation for why the documents are absent.[50]

---

[50] This Court previously reached this same conclusion in our unpublished memorandum opinion in *Waters v. State*, 1996 WL 341613, at *4 (Alaska App. Mar. 20, 1996) (unpublished). There, we explained that Criminal Rule 35.1(d) "addresses form, not substance" by prescribing "what types of information and documentation must be included before an application is formally complete" and that "[n]othing in Rule 35.1(d) has to do with whether an application sets forth a *prima facie* case for relief on the merits." *Id.*

I acknowledge that in *Peterson v. State* we asserted that "[w]e have repeatedly stated that the trial attorney's affidavit is an essential component of the defendant's *prima facie* case — that without the affidavit (or an explanation of why the affidavit can not be obtained), the defendant's pleading is subject to summary dismissal." *Peterson v. State*, 988 P.2d 109, 113-14 (Alaska App. 1999). However, none of the authority we cited supports that assertion. We relied, for example, on *Jones* and on *Steffensen v. State*, 837 P.2d 1123 (1992), but neither of those cases contain this holding. *Peterson*, 988 P.2d at 113-14 n.6-7. In *Jones*, we stated that

> in order to establish a *prima facie* case of ineffective assistance of counsel, it will *ordinarily* be necessary for the accused to submit an affidavit of trial counsel addressing this issue. *This requirement should not be enforced inflexibly*. In some cases, the *accused may personally be aware of specific facts* ruling out the possibility of sound tactical choice, *or there may be other evidence available* to rule out that possibility.

*Jones*, 759 P.2d at 570 (emphasis added). In *Steffensen*, we relied primarily on *Jones*, and we stated that an attorney's strategic decisions "*generally* rest on considerations that are not directly addressed in open court" and that "[w]hen the record does not adequately reveal the basis for the attorney's decision, the defendant has failed to establish a case for post-conviction relief." *Steffensen*, 837 P.2d at 1127 (emphasis added).

In *Peterson*, we also relied on *Lott v. State*, 836 P.2d 371 (Alaska App. 1992). *Peterson*, 988 P.2d at 114. We asserted that, in *Lott*, "we expressly held that an affidavit from the former attorney is always required when a defendant seeks to withdraw a plea based on allegations of ineffective representation." *Id.* But this was incorrect. *Lott* contains no such holding; instead, in *Lott* we stated that "a person claiming ineffective assistance of counsel must *normally* present an affidavit or testimony from the allegedly ineffective attorney, in order to establish the reasons for the attorney's actions and to rule out the possibility that the conduct was based on sound tactical choice." *Lott*, 836 P.2d at 375 (emphasis added) (citing *Jones*, 759 P.2d at 569).

### c. The structure of Alaska Criminal Rule 35.1 and the analogous civil rules

My conclusion here is supported by the overall structure of Criminal Rule 35.1. This Court has previously explained that this rule sets out three stages to adjudicating an application for post-conviction relief.[51] The first phase "commences with the filing of the application."[52] During this phase, the applicant must file an application that complies with the requirements of Criminal Rule 35.1(d), which prescribes the types of information and documentation that must be included before an application is formally complete. It is only after the State has been served with a complete application that it is called upon by Criminal Rule 35.1(f)(1) to "file an answer or a motion within 45 days."

A motion to dismiss filed under Criminal Rule 35.1(f)(1) is similar to a motion to dismiss filed under Alaska Rule of Civil Procedure 12(b). Under this rule, the responsive party may file a motion to dismiss for failure to state a claim upon which relief can be granted rather than asserting this defense by filing an answer.[53] When a

---

[51]  *Jones*, 759 P.2d at 565-66.

[52]  *Id.* at 565; *see also* Alaska R. Crim. P. 35.1(c) (stating that a proceeding is commenced by filing an application).

[53]  *Compare* Alaska R. Civ. P. 12(b)(6) (allowing certain defenses to be made by motion prior to the filing of an answer, including a motion to dismiss for failure to state a claim upon which relief can be granted), *with* Alaska R. Crim. P. 35.1(f)(1) (providing that the State must file either an answer or a motion within 45 days of service of the application).

The standard a trial court applies when evaluating a Civil Rule 12(c) motion is equivalent to the standard for evaluating a Civil Rule 12(b)(6) motion. *See Cornelison v. TIG Ins.*, 376 P.3d 1255, 1278 (Alaska 2016) ("[T]he requirements for a Rule 12(c) motion are akin to the requirements of Rule 12(b)(6)."); s*ee also* 5C Wright & Miller, *Federal Practice and Procedure* § 1368 (3d ed. 2025) ("A significant number of federal courts have held that the standard to be applied to a Rule 12(c) motion that challenges the legal sufficiency of a claim [based on all the pleadings] is identical to that used on a Rule 12(b)(6) motion based solely on the complaint."); *compare McGrew v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 106 P.3d 319, 322 (Alaska 2005) ("A complaint should not be dismissed for failure to state a claim [under Rule 12(b)(6)] unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claims

motion to dismiss for failure to state a *prima facie* case is filed under Criminal Rule 35.1(f)(1), the trial court must determine the adequacy of the application on its face,[54] viewing "the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."[55] If the court ultimately finds that the application presents a colorable claim, the court must order the case to proceed and call upon the State to respond on the merits, and the second phase of the post-conviction proceedings — set out under Criminal Rule 35.1(f)(3) — commences.[56]

---

that would entitle the plaintiff to relief."), *with Prentzel v. State, Dep't of Pub. Safety*, 53 P.3d 587, 590 (Alaska 2002) ("The . . . defendants can prevail [on their Rule 12(c) motion] only if [the plaintiff's] pleadings contain no allegations that would permit recovery if proven.").

Although these rules require the court to apply the same legal standards, when a motion to dismiss a post-conviction relief application for failure to state a *prima facie* case is filed in lieu of filing an answer, it is more like Civil Rule 12(b)(6) than Civil Rule 12(c) because, like a Civil Rule 12(b)(6) motion, a Criminal Rule 35.1(f)(1) motion may be filed prior to the filing of an answer, and thus may be based on the application alone. By contrast, a Civil Rule 12(c) motion is filed "[a]fter the pleadings are closed" — *i.e.*, after the answer is filed. I accordingly disagree with our assertion in *State v. Jones* that a motion to dismiss filed under Criminal Rule 35.1(f)(1) is equivalent to a civil motion for judgment on the pleadings under Civil Rule 12(c). *Jones*, 759 P.2d at 565.

[54]  *Jones*, 759 P.2d at 565.

[55]  *Hebert v. Honest Bingo*, 18 P.3d 43, 46-47 (Alaska 2001); *see Jones*, 759 P.2d at 565; *Guerrero v. Alaska Hous. Fin. Corp.*, 6 P.3d 250, 253-54 (Alaska 2000) (explaining that courts reviewing a motion to dismiss under Civil Rule 12(b)(6) must deem all facts in the complaint to be true and provable and that "[a] complaint should not be dismissed for failure to state a claim *unless it appears beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (quoting *Martin v. Mears*, 602 P.2d 421, 429 (Alaska 1979)).

[56]  Alaska R. Crim. P. 35.1(f)(2); *see also Jones*, 759 P.2d at 565-66 ("[I]f the application . . . sets out facts which, if true, would entitle the applicant to the relief claimed, then the court must order the case to proceed and call upon the state to respond on the merits . . . . [This] commences the second phase of the post-conviction relief proceeding.").

During the second phase, the parties are given an opportunity to engage in the discovery process, so that they may "ascertain whether any genuine issues of material fact actually exist."[57] This second stage is designed to provide "an orderly procedure for the expeditious disposition of non-meritorious applications . . . without the necessity of holding a full evidentiary hearing."[58] To this end, Criminal Rule 35.1(f)(3) permits either party to file a motion for summary disposition of the application by alleging that "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Such a motion is "in substance identical to a Civil Rule 56 motion for summary judgment."[59]

Following the same procedure for Civil Rule 56, at the Criminal Rule 35.1(f)(3) stage, the party moving for summary disposition and the party opposing summary disposition ordinarily must support their positions with admissible evidence.[60] Although a party may request additional time for the purpose of obtaining evidence to defeat summary disposition, if the request for additional time is based on pure speculation that material evidence will be obtained or if the party was dilatory in their previous discovery efforts, the court may deny the request.[61]

---

[57] *Jones*, 759 P.2d at 566.

[58] *Fajeriak v. State*, 520 P.2d 795, 798 (Alaska 1974).

[59] *Jones*, 759 P.2d at 566.

[60] *See Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 450 (Alaska 1974) (stating that a party seeking summary judgment under Civil Rule 56 must meet its burden by submitting "material admissible as evidence"); *Miller v. City of Fairbanks*, 509 P.2d 826, 829 (Alaska 1973) (same).

[61] *See Wilkerson v. State*, 2020 WL 9174578, at *2-3 (Alaska App. Mar. 11, 2020) (unpublished summary disposition) (affirming the superior court's order granting the State's motion for summary disposition since Wilkerson did not provide "factual support for his [post-conviction relief] claims despite being given ample opportunity to do so"); *Hymes v. Deramus*, 119 P.3d 963, 965 (Alaska 2005) (explaining that for a party to receive a continuance under Civil Rule 56(f), it "(1) must unambiguously request relief on those grounds, (2) must not have been dilatory during discovery, and (3) must provide adequate

The third and final phase of a post-conviction relief proceeding is the evidentiary hearing provided for under Criminal Rule 35.1(g). Such a hearing is required "when, upon completion of the discovery and summary disposition phase, genuine issues of material fact remain to be resolved."[62]

### d. My view of the correct interpretation of Alaska Criminal Rule 35.1 and its application to this case

The superior court dismissed Talmadge's application during the first phase of the proceedings. With regard to Talmadge's claim that his attorney was ineffective for failing to call certain witnesses to testify at his trial, the superior court noted that Talmadge provided only his own affidavit and did not provide affidavits from the witnesses he alleged should have been called, nor did he provide an explanation for why these affidavits were not provided. Because Talmadge did not supply these affidavits or an explanation for their absence, the superior court found that he failed to establish a *prima facie* case.

But as I have explained, during the first phase of post-conviction relief proceedings, the question of whether the application is complete is a separate question from the question of whether the application states a *prima facie* claim for relief, and it has a separate remedy. If an application is incomplete, Rule 35.1(d) instructs that it "*shall* be returned to the applicant for completion."[63] But when the State files a motion

---

reasons why additional time is needed"); *Punches v. McCarrey Glen Apartments, LLC*, 480 P.3d 612, 623-34 (Alaska 2021) (reasserting that courts should not grant Rule 56(f) continuances "to support 'speculation'" (quoting *Sengupta v. Univ. of Alaska*, 21 P.3d 1240, 1260 (Alaska 2001))).

[62] *Jones*, 759 P.2d at 566.

[63] Alaska R. Crim. P. 35.1(d) (emphasis added). This requirement is similar to Rule 2 and Rule 3 of the rules governing federal habeas petitions. *See* Rules Governing § 2254 Cases, Rule 2 & Rule 3, 28 U.S.C.A. foll. § 2254. Prior to 2004, these rules required the court to return an insufficient petition and to dismiss the petition without prejudice if the petition had a curable technical deficiency. *See* Advisory Committee Notes to 2004

to dismiss for failure to state a *prima facie* case under Rule 35.1(f)(1), the trial court must determine the adequacy of the complete application on its face.[64] If the allegations made in the complete application, viewed in the light most favorable to the nonmoving party, do not establish a claim for relief, the proper remedy is dismissal of the application.[65]

This does not mean that Criminal Rule 35.1 fails to provide any procedural safeguards against the filing of frivolous applications for post-conviction relief. Indeed, the pleading requirements set out by Criminal Rule 35.1(d) are more stringent than those that are required by the rules that apply to civil cases.[66] Unlike a civil complaint, which may be filed without supporting evidence, an application for post-conviction

---

Amendments to Rules 2 and 3 of the Section 2254 Rules and Section 2255 Rules. This became problematic for petitioners after the adoption of a one-year statute of limitations in the Antiterrorism and Effective Death Penalty Act of 1996 because returning a defective petition could pose a significant penalty for a petitioner who was not able to file a corrected petition within the one-year statute of limitations. *Id.* In response to this harsh punishment for a procedural error, the Committee changed the rules so that clerks must accept a petition for filing even if the petition does not conform to the requirements of Rule 2. *Id.* In a similar vein, every circuit court that has addressed the issue has determined that equitable tolling of the statute of limitations may be available. *See, e.g.*, *Smith v. McGinnis*, 208 F.3d 13, 17-18 (2d Cir. 2000); *Miller v. N.J. State Dep't of Corrs.*, 145 F.3d 616, 618-19 (3d Cir. 1998); *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).

[64] *Jones*, 759 P.2d at 565.

[65] *Hebert v. Honest Bingo*, 18 P.3d 43, 47-48 (Alaska 2001); *Jones*, 759 P.2d at 565.

[66] *Compare* Alaska R. Crim. P. 35.1(d) (mandating that a post-conviction relief application include "[a]ffidavits, records, or other evidence supporting its allegations . . . [or] recite why they are not attached"), *with* Alaska R. Civ. P. 8(a), 10, and 11(b) (allowing plaintiffs to file civil complaints without supporting evidence).

relief must be accompanied by affidavits, records, or other evidence supporting the allegations, or must explain why such evidence is not being presented.[67]

These stringent pleading requirements allow the court to return applications that rely upon unsupported factual allegations, either *sua sponte* or upon request from the State, thus making it unnecessary for the State to expend time and effort preparing an answer or a responsive motion. Furthermore, if the applicant explains that they have been unable to obtain supporting evidence despite exercising reasonable diligence, but they provide no basis for the court to expect that such evidence could be obtained through the discovery process, the court may properly dismiss the application at this early stage.[68] In Talmadge's case, rather than enforcing Rule 35.1(d) and returning the application to the defendant for completion, the superior court dismissed the application during the first phase of the litigation, relying on Talmadge's failure to attach supporting evidence to conclude that the application had not set out a *prima facie* case. Under my interpretation of Rule 35.1(d), this was error.

### e. *Why I would disavow a portion of our previous decision in* <u>Allen v. State</u>

As I have explained, in *Allen v. State*, this Court stated that a motion to dismiss an application for post-conviction relief for failure to state a *prima facie* claim for relief is, in substance, identical to a Civil Rule 56 motion for summary judgment.[69]

---

[67] Alaska R. Crim. P. 35.1(d). As the State points out, the likely reason for this difference is that, unlike most civil actions, a post-conviction relief action is a collateral attack upon a final criminal judgment that is presumed valid.

[68] Indeed, if a court determines that an application is incomplete, the court should set reasonable deadlines for completion and should enforce its deadlines. And if the court determines that an attorney is not exercising due diligence to comply with the court's deadlines, the court should take appropriate action, including fining the attorney or taking other disciplinary action as permitted under Alaska Rule of Criminal Procedure 50(b) and (c) and Alaska Rule of Civil Procedure 95.

[69] *Allen v. State*, 153 P.3d 1019, 1025 (Alaska App. 2007).

We also announced that a failure to provide supporting affidavits from people with firsthand knowledge of the pertinent information if called to the stand — or, alternatively, an explanation for why such affidavits cannot be obtained — would constitute a valid basis for dismissing Allen's application.[70] However, these statements in *Allen* were mistaken and should be disavowed.

It is important to note, however, that in *Allen*, the superior court did not rely upon Allen's failure to provide supporting evidence when it dismissed his application for post-conviction relief. And this Court similarly did not affirm the superior court's order on that basis.[71] Rather, we affirmed the superior court's order because we determined — as had the superior court — that the facts alleged in Allen's application, if assumed to be true, failed to state a *prima facie* case of attorney incompetence.[72] Thus, *Allen*'s discussion pertaining to Criminal Rule 35.1(d) is *dicta*, and this Court does not need to overrule it in order to correct it.[73]

But if it were necessary to overrule *Allen* in order to correct it, I would conclude that the standard for doing so has been met.[74] *Allen*'s interpretation of

---

[70]  *Id.* at 1025-26.

[71]  *Id.* at 1026.

[72]  *Id.* at 1026-27.

[73]  *See Buntin v. Schlumberger Tech.*, 487 P.3d 595, 601 (Alaska 2021) ("Expressions in the court's opinion which go beyond the facts before the court are individual views of the author of the opinion and not binding in subsequent cases as legal precedent." (quoting *VECO, Inc. v. Rosebrock*, 970 P.2d 906, 922 (Alaska 1999) (cleaned up)).

[74]  *See Young v. State*, 374 P.3d 395, 413 (Alaska 2016) ("We will overrule a prior decision only when clearly convinced that the rule was originally erroneous or is no longer sound because of changed conditions, and that more good than harm would result from a departure from precedent." (cleaned up)); *see also Pratt & Whitney Can., Inc. v. Sheehan*, 852 P.2d 1173, 1176 (Alaska 1993) ("A decision may prove to be originally erroneous if the rule announced proves to be unworkable in practice."); *State v. Dunlop*, 721 P.2d 604, 610 (Alaska 1986) ("We do not lightly overrule our past decisions.").

Criminal Rule 35.1 was erroneous and has led to courts dismissing applications based on a technicality that an applicant or their attorney could easily have cured, rather than deciding these applications on their merits.[75] I note that Alaska Criminal Rule 35.1 does not authorize courts to rely on an application's failure to include the documents required by section (d) ("affidavits, records, or other evidence"), or an explanation for why the documents are absent, as a basis for determining that the application fails to state a *prima facie* claim.

Furthermore, by mistakenly comparing a Criminal Rule 35.1(f)(1) motion for failure to state a *prima facie* claim to a Civil Rule 56 motion for summary judgment, our opinion in *Allen* incorrectly stated that Criminal Rule 35.1(d) can only be satisfied with "admissible" evidence, such as supporting affidavits from people who could testify to the pertinent information if called to the stand. This requirement exists for motions filed during the second phase of the post-conviction proceedings, which *are* analogous to civil summary judgment motions and accordingly *do* require the parties to provide "admissible" evidence, but it does not exist at the first phase.[76]

Because more good than harm would flow from overruling our incorrect statements in *Allen*, and because the parties have fully briefed this issue, I would take this opportunity to clarify two points of law. First, a motion to dismiss an application for post-conviction relief based on an alleged failure to state a *prima facie* claim for relief is *not* analogous to a Civil Rule 56 motion for summary judgment. Second, failure to comply with the requirements of Criminal Rule 35.1(d) is not grounds for dismissing an application for failure to state a *prima facie* claim.

---

[75] *See Waters v. State*, 1996 WL 341613, at *5 (Alaska App. Mar. 20, 1996) (unpublished) (explaining that "[t]he distinction between returning an incomplete application, as directed in Rule 35.1(d) itself, and summarily dismissing an application under Rule 35.1(f)(2) cannot be dismissed as inconsequential").

[76] *See Waters*, 1996 WL 341613, at *4.